The last case this morning is case number 4-17-0146, Sharanda Harper et al. v. Decatur Transit Management, Inc. and Stephen L. Dickerson. Appearing for appellant is Attorney Brian Hetzer, correct? That's correct. All right, and for appellee is Attorney John Robinson, is that right? Yes. All right, thank you. Good morning, gentlemen. Mr. Hetzer, are you ready to proceed? May it please the Court, Counsel, my name is Brian Hetzer and I'm an attorney with the law firm McCarland Flights here in Falkenburg and I'm an attorney for the appellants in this case, Sharanda Harper, individually and as parent, guardian, and ex-friend of Sharanda Harper. In this matter, I submit to you that the trial court erred in granting summary judgment in favor of the defendants when evidence exists that it failed to warn a minor child of the dangers of crossing in front of a municipal bus, especially when the defendants had knowledge of prior incidents of similar incidents and injuries occurring. As a result, that ruling must be reversed. And since this is a ruling, entering summary judgment, a brief recitation of facts is necessary. Well, Counsel, I don't want you to run out of time here by going into facts. Just understand that we have read the briefs and understand the facts. Specifically in this case, this is a child that was how old, 14, 15 years old? She was 14. She just started her freshman year of high school. All right. Riding a municipal bus, but the bus was carrying her from her school to a bus stop, which she then would walk from to her aunt's house. Is that right? That is correct. From a liability standpoint here, from the standpoint of analyzing liability in this case, does it matter that she was coming home from school? Does her status as a student play any part in the bus company's liability here? Or are we simply looking at her as a passenger on a municipal bus? Sure. Well, I think her role as a student does play a part because the bus company did contract with the school district to transport these students home. And it knew that it would have students on the bus. Not only knew that it would have students on the bus, but knew that it would have unaccompanied minors on the bus. And the most important fact in this case is that this was the first time Jeria Harper had ever ridden a municipal bus. Did the bus driver know that? No, the bus driver didn't know that at the time, but the bus driver knew that it was the start of the school year. And the bus driver knew that there might be first-time passengers on that bus. Because the bus driver knew that as part of his role as the bus driver, he was transporting school children from the school to their home. Well, if the school district contracted with the municipality, why didn't the school district include in that contract additional warnings or the like in order for the municipality to get the contract to carry the students to and from school on the mass transit? Well, with respect to the bus company, when it did contract with the school district, it accepted the responsibility as a common carrier to transport these students from a location where the school district provided them to be picked up and take them to a location, specifically a bus stop, to their home. So you're acknowledging that their responsibility is that of a common carrier. Their responsibility is that of a common carrier, though according to the litany of cases cited in my brief, once someone does exit the bus, it changes to a standard of ordinary care. But while she was on the bus, absolutely. It was a common carrier standard, and I think even the defense would agree with that. But once she alighted off the bus, then it becomes a standard of ordinary care. What are they supposed to do then with the passenger once they alight from the bus? Sure. And that's why I think that the warning is important. And the trial court did that correctly and framed that as the most important part of this case, the failure to warn. Where the trial court erred is that they took it away from the jury. And the warning in this case, the defendants indicated that they had a sign. But as the record reflects, and as the deposition testimony indicates, no one in this case can tell you where that sign exactly was on the date of the occurrence. They say it might have been above the back door, it might have been across from the back door, it might have been in front of the front door. No one can tell you exactly where that warning sign was. What did it say? It warned of the dangers of crossing in front of the bus. Was the child deposed? The child was deposed. Was she asked if she saw the sign? She does not have any recollection of seeing the sign. Fortunately for her, she does not have much recollection of that day at all due to the significant impact of the car striking her. Was there also a sign on the rear of the bus for vehicles trailing the bus, alerting them that children may be crossing, or pedestrians may be coming across in front of the bus? At that time, it's my understanding, no. In fact, after this incident happened to Jaria Harper, they actually convened a meeting where they talked about six things that they could have do to help warn these students of the dangers of crossing in front of the bus. The only one that they did enact is that they did put a sign on the back of the bus after this incident happened. But there wasn't a sign on the back of the bus at the time of this particular accident? That is my understanding, yes, because that was changed after the incident did happen. I want to ask you again about the minor status of the student and what part, if any, that plays in the analysis of whether or not the bus company can be liable in this case. Presumably, this exact same scenario could have played out with the minor child being hurt on Saturday on her way back from the mall, taking a municipal bus, getting off the bus and crossing in front of it, and it wouldn't seem that her status as a high school student would play any part in comparison to the analogous situation that I just described. Would you agree? That would be correct, and I would agree with that if this would have happened in December or if this would have happened in February. This happened in August. She would not have been on that bus but for the fact that she was taken home from school to the location. That's but for liability, and you don't want to go there. Illinois doesn't recognize that. Just correct me if I'm wrong. There's no prohibition against a 14-year-old child riding the bus alone. Is that right? That is correct. Okay. So she could have been on a weekend riding this exact same bus and have done the exact same thing, and the fact that it occurred in those circumstances shouldn't call for any different analysis than the analysis that applies here, correct? I would agree with that. Okay. So we can put aside the school part of it. We're not talking about an extra degree of warning here. Is that right? You're just asserting that bus passengers should have been warned of the danger of crossing in front of the bus. That's correct, and given that they did actually talk about six ways that that could happen, that they could provide additional warning or a better warning than one that was provided. Because obviously this warning that was on the bus was not adequate, because in two prior incidents in the same year and on the same bus route, two children crossed in front of the bus and were struck. Well, but are they running at a 45-degree angle across two lanes of traffic and ultimately getting hit by the vehicle in the farthest lane, meaning they'd already gotten past the bus, could see at least one lane of traffic before they got hit? Is that what happened here? She was struck in the adjacent lane. It was a four-lane road, so there were two lanes going one direction and two lanes going the opposite direction. She was actually struck in the adjacent lane. So looking to the left, the bus actually wouldn't have struck. But she could have been visible, and vehicles were visible for some distance after she passed the side of the bus. She traveled at a 45-degree angle, didn't she? Well, the actual angle in which the passenger traveled in this particular case, I submit to you is actually a red herring. Because regardless of whether or not she traveled at a 45-degree angle or a perpendicular angle, she crossed in front of the bus. That was the issue with this case. She didn't go 20 yards down the way and then cross in front of the bus. She got to the corner of the bus and then crossed. Whether it's 45 degrees or perpendicular, she still crossed in front of the bus. That's the warning that she needed, and that's the warning she didn't get. What is the warning you're asserting should have been given? There should have been a more adequate warning, as there is evidence that the warning that was given, the sign that was on the bus, was not sufficient. There were other additional factors. No, sorry. Specifically, what should the warning have been? Well, the warning should have specifically mentioned the dangers of crossing in front of the bus and should have been a proper warning that would be one that the passengers would see or hear while they're on the bus. This one did not provide that kind of warning. Was there any kind of expert testimony in this case in regards to the sufficiency or inadequacy of warnings? No expert testified on the sufficiency or the adequacy of the warning itself, but actually an individual that the defense presented indicated himself that he wasn't sure if that particular warning that was inside the bus would be sufficient to warn passengers of the dangers of crossing in front of the bus. So they themselves weren't sure if that warning sign, the warning sign that they don't know where it was on the bus, on that particular dating question would have been sufficient to warn someone of the dangers of crossing in front of the bus. How old are you when you were told look both ways before you cross? Sure. And that is something that the trier of fact should be able to decide. The trier of fact has to look at this case based on the age and education of the injured party. She was 14. She wasn't an adult at that time. The trier of fact needs to hear that evidence, needs to see the testimony, and needs to determine whether or not there's some sort of contributory negligence out there. And if there is contributory negligence, they can assign that at that time. That decision shouldn't be taken away from the trier of fact. Well, the issue of whether or not someone might be distracted or need an enhanced warning, it's not necessarily germane to the issue of contributory negligence. It's as to the sufficiency of the warnings. So the cases that you cited, too, you know, there's a situation where maybe the individuals are being let out near a railroad track and so forth, or the angle of the bus was such that it enhanced the risk of danger. What was the enhanced risk of danger here by letting a passenger off at a designated bus stop? The enhanced risk of danger was the timing when this occurred, the beginning of the school year, and the fact that it had a high likelihood that some of these students, especially the freshmen, as it was their first year of taking a municipal bus, had never ridden a municipal bus before, and they had always taken the yellow school bus before, which actually stops traffic in the adjacent lane. Well, Counsel, I thought you answered Justice Harris' questions earlier that the student status was not an issue here, and that response you just gave to this later question seems to suggest you're back to saying it does make a difference. Well, I think the student status does make a difference. As to the timing of the incident, they knew that they were taking students home from the school property to the bus stop near their location, and given the timing when this occurred, it's a high likelihood that it's going to be new students and also people who have not taken that bus before. So in that circumstance, the student actually does play a role into something that the jury has got to consider with respect to this 14-year-old girl, that she had never taken this bus before because she never had occasion to. Well, I will candidly tell you, Counsel, I didn't realize that schools use mass transit to transport their students because normally a bus, the yellow bus that we're all used to seeing, would have a stop sign that goes out so that somebody wouldn't be passing the bus, and have red lights going, and let everybody know they better be stopping or there's a substantial fine if you don't. And so I keep coming back to how did the school enter into a contract with the municipality which didn't take into consideration those factors which are normally present to protect students from this very kind of thing? Sure. And in Decatur, I think it is a common occurrence that once they reach high school age, then they do take the municipal bus. The defendants actually talked about in this case that they discussed the possibility of going into the school district and actually teaching the students the dangers of riding on the bus and the dangers of crossing in front of the bus. So in and of itself on that, the defendants not only recognized it, but then they also recognized that they were ones who should warn the people of their new passengers of the dangers of crossing the bus. Now in the cases cited in my brief, specifically the Diaz decision, in that case, very similar to the facts of this case, the individual exited out of the bus, crossed in front of the bus, and was struck by a car. As in this case, the defense in that case, the bus driver and Diaz didn't stop at the normal stop and motioned for the person to go ahead and go. That's not the case here, is it? Right. One point in that case is very important, though. In that case, the defense argued that the passenger could have just stayed in the place of safety. They could have just stayed on the sidewalk. But the appellate court held that that wasn't a reason to overturn the jury verdict and favor the plaintiff. The jury should be able to decide that. And that's a similar situation that happened here, and that's a similar argument that the defense is making, that she could have just stayed on the sidewalk. She didn't. And that's something for the jury to decide. As the jury got to decide in Diaz, and my client should have the right to do that as well. And then also in Garrett, a minor child exited a school bus, walked at least 10 feet away from that school bus, and then crossed the railroad tracks and suffered a broken ankle. And again, in Garrett, the school district was already on notice that the kids were going to have to cross this track, not at a normal track crossing. They were just crossing wherever possible. That was something that they knew. So then that goes to the ordinary care standard we're talking about, right? I agree with that. And the interesting point about Garrett, though, is that the people walked 10 feet away. So even 10 feet away, that ordinary care standard still did apply. And that ordinary care standard still should apply in this case, even when she was struck after she left the bus. Now, counsel in oral argument cited to the Crutchfield decisions and the Mitchell decisions. Now, it's interesting in those cases to note that summary judgment was decided in favor of the defense in those cases, but the issues were the placement of the bus stop. That's not the issue here. We're not arguing that the bus stop was placed in the wrong location. We're not arguing that the bus stop was placed in a dangerous location. We're arguing, as the trial court did narrow it down, saying that the most important issue was the failure to warn. Those issues were not discussed in the Crutchfield decision or the Mitchell decision. Now, with respect to this particular case and the duty of ordinary care, that duty should apply in this case as well because the duty will apply when there is a foreseeability of the injury, the magnitude of the injury, and the burden out there. The foreseeability that were two prior incidents that happened on two prior occasions with minor children in the same year on the same bus route. Were they students as well? They were minor children. I'm not sure if it was actually a school day, but they were certainly minor children. And the magnitude of the injury that you're warning against in a duty like this one, anytime you're dealing with a pedestrian in a car, the magnitude of the injury is death. That's the potential. And the burden on the bus company is minimal to provide an adequate warning to its bus passengers in order to warn of the dangers of crossing in front of the bus that they might get struck by a car. In conclusion, a reasonable jury could find that the defendants failed to warn, failed to properly warn a first-time minor passenger of the dangers of crossing in front of a municipal bus. The trial court erred in entering summary judgment. It erred in taking that issue away from the jury. And this court should overturn that ruling and allow plaintiffs to have their day in court and prove their case before a jury of their peers. Thank you. Thank you, Mr. Hetzer. You'll have time in rebuttal. Mr. Robinson, argument? Thank you, Your Honor. May it please the court, counsel. From defendant's perspective, a police perspective, this case may be summarized by a single question. Where's the duty? Defendants are entitled to summary judgment in this case because they breached no duty owed to plaintiff's minor. And because considered in a light most favorable to the plaintiff, her conduct constitutes contributory negligence as a matter of law. And I know that's unusual. That's not your strongest argument, though, when it relates to contributory negligence. I'll move on. Thank you, Your Honor. Defendants owed plaintiff's minor the highest duty of care while she was a passenger on their bus. The duty ceased, however, once she alighted from the bus to a place of safety. And thereafter, defendants owed her a duty of ordinary care. However, what is that duty? Let's say, for example, that that duty involved assigning an employee of this bus company that provides public transportation services to the general public and has little, if any, authority to refuse to provide those services to paying passengers, paying customers. Let's say that they assign an employee to accompany plaintiff's minor. Get on the bus with her. Stay with her on the bus. Leave the bus with her. At what point does the plaintiff's minor's relationship with the bus company become so attenuated as to no longer be within the purview of any duty whatsoever? Your Honor, plaintiff has not pled and does not define any act or omission of the defendant's in controlling or failing to control the movement of plaintiff's minor after she exited the bus. And, in fact, none is demonstrated in this case. The relevant case law includes Kadame versus the Chicago Transit Authority. Kadame, a CTA passenger, tripped and fell while on a CTA platform. And the court there held that even though plaintiff was not actively on a convenience, the CTA owed plaintiff the highest duty of care. Then we go to Diaz. As Justice DeArmond pointed out, that involved a bus stop that other than the usual stop, the passenger alighted. The bus, however, blocked the passenger's view of traffic. The bus driver then signaled to the passenger, motioned that it was okay to cross,  The evidence in this case was clear. The bus was stopped at a designated bus stop. There is no claim that the transit company was negligent in the placement or designation of that bus stop. And there is no dispute that driver Derrickson did not see plaintiff until an instant before she was struck by the vehicle operated by Defendant Boston. Moving on to Serba versus the City of Chicago and the Chicago Transit Authority. A bus driver blocked a marked pedestrian crosswalk, and plaintiff, a 12-year-old schoolboy, crossed in front of the bus and was struck by a car. In Serba, the court held that whether the bus driver's conduct was a proximate cause of the child's injury was a jury question. However, it's distinguishable from the case at Bar because there's no evidence that driver Derrickson blocked a crosswalk or did any violation of any motor vehicle code provision. Trevino versus Flash Cab. That's the case where the passenger was wrongfully ejected from a cab and wandered several blocks in snowy streets to her original destination. However, that's a little bit of an unusual case and inapplicable to the facts of this case in that A, the cab driver in Trevino knew plaintiff's destination. There's no indication that driver Derrickson knew that plaintiff's minor was traveling to her aunt's house. And there's absolutely no evidence that plaintiff's minor was wrongfully ejected from the bus. Garrett cited by plaintiff. In Garrett, the real issue was the adequacy of that bus stop. And there's no claim in this case that the bus stop was inadequate. Crutchfield versus Yellow Cab. CTA in the city of Chicago. In that case, the court found CTA breached no duty of ordinary care to plaintiff who had safely disembarked. The court found no duty to move the bus so that plaintiff could see the traffic. Counsel, there have been several questions asked about the status of the plaintiff. I guess I'm wondering, could you not have contracted yourselves into a situation where your duty becomes higher in taking on the responsibility of taking first-time passengers who are young, high school students for the first time, knowing that they are going to be taking a municipal bus for the first time? In many instances, could you not contract yourself into a situation where your obligations and responsibilities are greater? Certainly, Decatur Transit Management could have done that. They did not. The extent of the contract was that the school district would issue bus passes on behalf of the transit management. I guess it's a poorly written question. I guess my real question is, didn't you do that in this case by taking on the responsibility of taking these passengers, then take on the added responsibility of having to provide either cautions, warnings, or some sort of sign or notice beyond what might normally be required of a common carrier? Well, that's a complex question that is not, I believe, raised to the facts of this case, but I'll try and answer it. And yes, the transit management defendant could have contracted with the school district much as school bus companies contract with the school district to transport school children to and from school. That's not the case here. Even if they had, again, the hypothetical of the transit management employee assigned to this plaintiff's minor's safety, had there been such a contract, had it given rise to such a duty, had transit accepted that duty and assigned individual employees to accompany school students, by the time plaintiff's minor alighted from the bus to a place of safety, left the place of safety, crossed a lane of traffic, and entered into another lane of traffic, the relationship to the bus company is so attenuated as to not arise to the level of a duty. And that is the gist of the defendant's argument in this case. In Mitchell v. City of Chicago, cited by plaintiff, that involved a bus passenger who alighted at a designated bus stop, crossed the street mid-block in front of the bus, and was struck by a car. And in that case, the court held that foreseeability alone doesn't create the existence of a legal duty. In that case, the court found CTA had no duty to protect its passengers from obvious street dangers. Plaintiff urges that the accident causing her injuries was foreseeable, thus creating a duty. The Mitchell case refutes that argument. So there's no significance to the fact that there were two youths that were injured in similar type fashion prior to this particular accident? It does. I can't say there's no significance. The fact that it occurred, the fact that the transit company was aware of it, the fact that the transit company discussed it and sought to deal with it are facts in this case. I don't think those alone give rise to the duty. Well, counsel, I mean, frankly, there's no evidence that those same accidents occurred at this particular stop, correct? That is correct. There's no evidence establishing the circumstances surrounding those other incidents or injuries, is that right? That's correct. So in terms of determining what heightened safety risk was present at this particular stop, those prior incidents don't have any profitable value as I see it. And that's how the transit company saw it. The acts of discussing it and placing the signs up were attempts to go above and beyond what they felt was required at the time. With regard to the duty to warn, in the first instance, whether a duty to warn exists is to be determined by the court and is appropriate for summary judgment. So how far in time and distance does the duty plaintiff alleges this court find extend? Plaintiff's mire exited defendant's bus to a place of safety. Thereafter, she left the place of safety, ignored the nearby crosswalk 40 to 50 feet away. There was a pedestrian crosswalk. She ignored that the bus obstructed her view of traffic in the roadway, and she ran, not walked, across a busy four-lane street. She didn't stop to look for traffic before she ran across the busy street, and she didn't look for traffic while she was crossing the busy street. Any duty which defendants may have had was so attenuated by the time plaintiff's mire was struck by defendant Bostop's vehicle as to vanish. And that's what the trial court found. Without getting too far afield here, has the school district ever been a defendant or third-party defendant in this case? No. Thank you. With regard to the signs in the bus, there were signs in the bus. The signs included words and a graphic. Mr. Hetzer said that it wasn't clear where the sign was. I noticed in your brief you said that the sign was above the rear door. The record is replete with evidence that it was clear that there was a sign over that rear door where it's believed plaintiff's mire exited. The driver of the bus testified to that. He included that in his affidavit. I don't think that's a disputed fact. With regard to plaintiff's mire, I believe that the law in Illinois, and this comes from Wolchek v. Public Service Co., and it is cited in one of the plaintiff's cited cases, and I think it's the Serba case. But in that case, the court looked at whether there's a presumption of responsibility for their acts by minors. And I believe that the law in Illinois is that a child under the age of seven years is conclusively presumed not responsible for his or her acts. However, between seven and 14, it's a regrettable presumption, which leads us to the significant fact of this case. Plaintiff's minor was 14, and there's no presumption that she's not responsible for her own acts. In fact, she's one year away from attaining the privileges under supervision of operating motor vehicles herself. Now, with regard to the notice that seems to be the gist of the plaintiff's case, including one involving a fertilizer spreader and another involving a medical device known as a catheter connector, for the proposition that notice was inadequate in this case, but those cases deal with a somewhat arcane risk of harm, each a little bit different, appreciated or able to be appreciated pretty much within the purview of the manufacturer and less than apparent to users of those products. The risk of harm in this case from running across a busy street is neither arcane nor less apparent to bus passengers, even bus passengers 14 years of age. Your Honors, as I began, the plaintiff has not pled and does not define any act or omission of the defendant's in controlling or failing to control the movement of plaintiff's minor after she exited the bus, nor is any demonstrated by the fact. For these reasons, defendants pray that this Court will enter some resentment affirming the trial court in this matter. And that's my argument. Counsel, I have one question, just for clarity. Are you arguing that your client did not breach a duty of ordinary care, or are you arguing your client had no duty? Both. Okay. Well, in the alternative. Explain it to me. In the alternative. Oh, I see. Initially, no, I don't believe there was a duty. Not even a duty of ordinary care? There was a duty of ordinary care. But in broad terms, a duty of ordinary care has to be more specific. What was the duty of ordinary care? I can't find it. Was it to provide somebody to walk plaintiff's minor clear to her aunt's house? Did it extend to had plaintiff's minor been struck by a car the next street over? Would the duty have extended to that? So you're saying it's okay for this Court, at the summary judgment stage, to make a finding that your client did not breach its duty of ordinary care, right? Under these extraordinary facts, yes. But primarily my argument is that there was not a duty. I can't find it. Okay. Thank you, Mr. Robinson. Rebuttal argument, Mr. Hetzer? Very briefly. Mr. Hetzer, following up on Justice Turner's question, last question in Mr. Robinson's answer, to say that there is a duty of ordinary care only goes partway to the question. The question isn't just is it a duty of ordinary care, but a duty of ordinary care to do what? Because the plaintiff has to identify what the specific act was that the duty extends to. So duty to do what here? The duty to warn passengers of the dangers, especially minor first-time passengers, of the dangers of crossing in front of a municipal bus and possibly getting struck by a vehicle in the adjacent lane that's traveling in the same direction as the bus itself. That's the duty in this case. Now, that is a question that should be answered by the trier of fact. I would submit to this Court, no. It is not satisfied by that sign because on the two prior incidents, they had that exact same sign. And the girls left the bus, the minor children left the bus, that same bus route in that same year, crossed in front of the bus, and were struck by a car. The same incident or the same injury that happened to Julia Harper. So what that's teaching us is that we shouldn't have school buses with flashing red lights and signs that come out because we've lulled kids into a sense of security. Is that what you're saying? No, I don't think that's the case at all. But if you're dealing with a situation where kids are used to that environment and then they transition to a municipal bus, and the municipal bus company knows that they're transporting those school children, it needs to take action in order to provide the adequate warning in order to prevent this foreseeable injury, which they recognized was foreseeable. In regards to the actual sign... You say they recognized it because they decided to do some things afterwards? No, they recognized it because they placed a warning sign. So they recognized that this injury was foreseeable, and this situation was foreseeable. They not only recognized that it was foreseeable by the warning sign itself, they knew of the prior incidents. So they knew it was foreseeable at the time that this happened to Julia Harper. What else did they need to do? Well, they talked about in their meeting that they could have automated announcements on the bus. On municipal buses, I ride one every day, there are automatic announcements that say move to the back of the bus, allow elderly riders to sit down on the bus, and there are automatic announcements on municipal buses. All it takes is pushing a button. And something like that could have been done in this case to provide the adequate warning to Julia Harper. The jury needs to decide whether or not this warning that was on the bus was adequate or not. And given that the prior two incidents did occur with that same warning, I submit to this court the warning was not adequate. And it was wrong, and the trial court erred in taking that decision away from the jury. And for that reason, this court should reverse the trial court's entry of summary judgment. Thank you. Thank you. Thank you both. The case will be taken under advisement and a written decision.